In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2892

CHRISTINE M. BUBE and CONNIE HEDRINGTON,

*Plaintiffs-Appellants*,

*v.*

ASPIRUS HOSPITAL, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:22-cv-00745-jdp — **James D. Peterson**, *Chief Judge*.

ARGUED APRIL 18, 2024 — DECIDED JULY 29, 2024

Before SYKES, *Chief Judge*, and BRENNAN and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. This appeal presents the question of what suffices under Title VII at the pleading stage of federal litigation to constitute a request for an accommodation based on "religion" in the context of an employee's request for an exemption from their employer's mandatory COVID vaccination requirement. Aligned with the explanation we supply in a separate opinion issued this same day in *Passarella &*

*Dottenwhy v. Aspirus, Inc.*, Nos. 23-1660 & 23-1661, we hold that an employee seeks accommodation because of their religion when their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice. The application of that standard here leads us to reverse the district court's dismissal of the Title VII claim brought by Christine Bube and Connie Hedrington.

**I**

While our opinion in *Passarella & Dottenwhy* fully explains the reasoning underpinning the legal standard we adopt, a summary is in order here.

The question presented is one of statutory construction, requiring in the first instance consideration of Title VII's language. Congress made it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1972 Congress amended the statute to clarify that "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

A plaintiff claiming that her employer failed to accommodate her religion must as a threshold matter show that (1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the

employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment. See *Adeyeye v. Heartland Sweeteners*, 721 F.3d 444, 449 (7th Cir. 2013). Title VII's broad definition of religion tells us most everything we need to know about the scope of the "religious in nature" inquiry. The employee must allege facts plausibly permitting an inference that some "aspect[]" of the accommodation request is based on the employee's "religious observance and practice" or "belief." 42 U.S.C. § 2000e(j). Put another way, the controlling inquiry at the pleading stage is whether the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice.

## II

This standard finds straightforward application on the facts alleged in the complaint brought by Christine Bube and Connie Hedrington. Both plaintiffs worked for many years as registered nurses at Aspirus, Inc., a non-profit hospital system based in Wausau, Wisconsin—Bube since 2002 and Hedrington since 1990. In response to the COVID pandemic, Aspirus announced in November 2021 that all employees would be required to receive the COVID vaccine as a condition of employment—save those who sought and received a religious exemption. Bube and Hedrington applied for exemptions from the mandate, but Aspirus denied both requests and terminated their employment in December 2021.

The content of Bube's and Hedrington's exemption requests very much matter. For her part, Bube informed Aspirus in her initial request that she is a "baptized and a practicing Catholic" and "following my conscience of refusing the Covid vaccine at this time." After Aspirus denied her initial

request, she appealed and further explained that she tries to "eat healthy" and "remain active" to "keep my God-given mind, body, and soul healthy." Citing her safety concerns about the vaccine, she then stated that receiving it "would be going against what God has intended for me."

Hedrington's request invoked similar themes. In her appeal to the hospital, for example, she cited her belief that God is her "creator" and that God "made me in his image and has given me life. He created me perfectly!" As a result, "I trust in God completely and cannot accept this vaccine in my body."

We have no trouble concluding that both of these requests are based at least in part on an aspect of the plaintiffs' religious beliefs. God "gave" Bube a "mind, body and soul" so that she feels obligated to avoid what she considers unsafe substances in order to remain healthy. And Hedrington was "created … perfectly" by God so that accepting a "risk[y]" vaccine would be a "sin."

The district court took a different, more parsing approach and dismissed Bube and Hedrington's Title VII claim because their accommodation requests did not "tie [their] general statements to any [] particular religious belief or practice that [is] inconsistent with taking the vaccine." In the same vein, the district court concluded that the plaintiffs' objections are "about personal autonomy, as well as the safety and efficacy of the vaccine." But as we explain in *Passarella*, the fact that an accommodation request invokes or even rests in the main on secular considerations does not negate its religious nature. Bube's and Hedrington's requests contain health and safety concerns, but the critical point is that their requests by their terms are also based in part on religious belief.

Scrutinizing the composition of these requests—especially at the pleading stage—runs counter to not only the broad language of Title VII but also the Supreme Court's repeated warnings that the law requires a hands-off approach when it comes to defining and discerning the core limits of religious exercise. See, *e.g.*, *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 716 (1981) (explaining that "it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith" for purposes of First Amendment protection); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014) (emphasizing that "federal courts have no business addressing [] whether the religious belief asserted in a [Religious Freedom Restoration Act] case is reasonable"); *United States v. Ballard*, 322 U.S. 78, 86 (1944) (emphasizing that "[r]eligious experiences which are as real as life to some may be incomprehensible to others").

We too have recognized—in the Title VII context no less—that courts should avoid putting themselves in the impossible position of trying to define religious legitimacy and viewpoint sufficiency. See *Redmond v. GAF Corp.*, 574 F.2d 897, 900–01 (7th Cir. 1978) (explaining that Title VII protects "conduct which is 'religiously motivated,' i.e., all forms and aspects of religion, however eccentric"); *Adeyeye*, 721 at 452 (emphasizing Title VII's "broad and intentionally hands-off definition of religion"). Our treatment of Bube's and Hedrington's exemption requests is consistent with the caution demanded when it comes to religious belief and exercise.

The standard we announce today also aligns with the one adopted by both the Sixth and Eighth Circuits—the only two other circuits to have decided the question presented here. See

*Lucky v. Landmark Med. of Michigan*, 103 F.4th 1241 (6th Cir. 2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024).

### III

A final point warrants mention in closing. Aspirus's vaccination mandate warned any employee requesting a religious-based exemption that "including misinformation (not supported by widely accepted medical or scientific information) or including non-religious rationale anywhere in the [employee's] submission will likely result in denial." Indeed, the company's guidance then went even further, including as one example of "misinformation" "the presences of fetal cells or tissue in the vaccine."

In their complaint, Bube and Hedrington expressed reservations about whether Title VII allows an employer to impose such limitations on the content and viewpoint an employee wishes to convey in requesting religious accommodation. These concerns are serious. An employer cannot at one and the same time adhere to Title VII's obligation to accommodate religious beliefs yet prevent an employee from articulating the basis of her beliefs. Apart from sounding this reservation, though, we decline to say more on this point as Bube and Hedrington did not develop this aspect of their Title VII claim in the district court. Nor have they done much on appeal. Bube and Hedrington do not tell us, most importantly, that Aspirus's guidance actually prevented them from including fetal cell-based objections in their exemption requests.

Having already determined that the plaintiffs' requests are based in part on religion, our analysis need go no further. We REVERSE and REMAND for further proceedings.