Filed 1/22/25  Sattley v. The City of Beverly Hills CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSH SATTLEY, | B334048 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV45066) |
| v. | |
| THE CITY OF BEVERLY HILLS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

JW Howard/Attorneys, John W. Howard and Scott J. Street for Plaintiff and Appellant.

Richards, Watson & Gershon, Rebecca T. Green, Jennifer Petrusis and Garen N. Bostanian for Defendant and Respondent.

Appellant Josh Sattley, formerly employed as a firefighter for respondent City of Beverly Hills (city), appeals from a final judgment entered in favor of the city. Sattley sued the city after he was terminated from employment, asserting causes of action for violations of his civil rights and violations of the California Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900 et seq.). In this appeal, he challenges two trial court orders: the order sustaining the city's demurrer to his cause of action for failure to accommodate religious beliefs and the order granting summary judgment on his FEHA retaliation claim. We find no error and affirm the judgment in full.

## FACTUAL BACKGROUND

Sattley worked for the Beverly Hills Fire Department for 11 years. During that time, he received excellent performance reviews.

On August 12, 2021, the Health Officer of the County of Los Angeles issued the Health Care Worker Vaccination Requirement (health order). The health order required certain healthcare workers, including emergency medical technicians (EMT's) and EMT-paramedics, to be vaccinated against COVID-19 by September 30, 2021. City firefighters, as certified EMT's or EMT-paramedics, were required to comply with the health order and get vaccinated. The city's fire chief, Gregory Barton, notified all city firefighters they had to comply with the health order by September 30, 2021.

The health order allowed an individual to "be exempt from the vaccination requirements . . . only upon providing . . . a declination form, signed by the individual stating either of the following: (1) the worker is declining vaccination based on

2

Religious Beliefs, or (2) the worker is excused from receiving any COVID-19 vaccine due to Qualifying Medical Reasons." An organization or agency subject to the order could permit an unvaccinated employee to work under certain conditions, provided the agency "deem[ed] [the] worker to have met the requirements of an exemption."[1]

Many firefighters, including Sattley, submitted signed forms declining to get the COVID-19 vaccine for religious reasons. On September 28, 29, and 30, 2021, the city's human resources director, Shelley Ovrom, met individually with each of the firefighters, including appellant, to determine which of the firefighters were eligible for a religious accommodation. Fourteen firefighters were granted an accommodation, four withdrew their requests, and six firefighters' requests were denied. Of the six firefighters whose requests were denied, all except Sattley later submitted proof of vaccination. Because Sattley did not have an approved accommodation or exemption, he was placed on administrative leave on October 1, 2021. Ovrom and Chief Barton decided to place Sattley on leave because he was no longer qualified to perform his job under the health order.

---

[1] The form does not require an employer to grant an exemption upon the filing of the declination form. The permissive language of this section of the health order, stating a worker "may" be exempt upon providing the required form, along with the language permitting the employer to "deem[] [the] worker to have met the requirements of an exemption," allow some discretion on the part of the employer to review and approve each individual request for exemption.

3

By e-mail on October 8, 2021, Ovrom inquired whether appellant intended to get vaccinated so he could return to duty. She stated, "It is the City's hope that you will decide to get the vaccine so you can continue to serve the community as a firefighter under the County Order." Ovrom offered to have another meeting if Sattley needed any further information or wanted to discuss the city's decision. Sattley did not respond.

Ovrom and Chief Barton spoke regularly about Sattley's employment status between October 1, 2021, and December 14, 2021. They ultimately concluded Sattley could not remain an employee of the city when the city could not allow him to perform his job under the health order.

After being placed on administrative leave, Sattley criticized the city's COVID policies and its refusal to grant him an accommodation. Part of this criticism involved Beverly Hills City Councilmember John Mirisch, who spoke out against any firefighters disingenuously seeking religious exemptions. Sattley criticized Mirisch and the city on Instagram.

On December 14, 2021, Chief Barton issued a notice of intent to discipline, informing appellant that without a COVID-19 vaccine or exemption, appellant could not serve as an EMT or EMT-paramedic under the health order, and therefore did not meet the minimum qualifications for his position.

Sattley received a due process (Skelly) hearing, and the hearing officer recommended Chief Barton proceed with termination of Sattley's employment. On March 9, 2022, Chief Barton terminated Sattley, effective March 11, 2022. The termination notice informed appellant: "[b]y failing to comply with the County's Order, you are no longer qualified to work as a Firefighter within L.A. County." (Underscoring omitted.) Sattley

4

was given his back pay for the time period he was on unpaid leave.

## PROCEDURAL HISTORY

Sattley and another firefighter filed a lawsuit against the city, Councilmember Mirisch, the County of Los Angeles, and County Health Officer Muntu Davis on December 10, 2021. Sattley was on unpaid leave at the time and had obtained right-to-sue letters from the California Department of Fair Employment and Housing (DFEH) and Equal Employment Opportunity Commission (EEOC) in response to his discrimination charge.[2]  The second amended complaint (SAC), filed August 9, 2022, is the operative complaint.  It contained 11 causes of action.  In December 2022, the trial court sustained the city's demurrer to all causes of action except the 11th cause of action for retaliation in violation of FEHA.

As to Sattley's cause of action for failure to accommodate religious beliefs, the trial court wrote Sattley "failed to allege requisite facts regarding the belief held by Sattley that conflicted with the mandatory COVID vaccination."  The court found Sattley's allegation he "had a sincerely held religious belief or practices that conflicted with a stated job requirement" to be "wholly conclusory."

The city filed a motion for summary judgment on the retaliation cause of action on July 6, 2023.  The city argued Sattley's retaliation claim should be summarily disposed of for

---

[2]     In his DFEH charge filed in November 2021, Sattley asserted: "I believe I was discriminated against due [*sic*] my religion (Mormon/Christian), in violation of Title VII Civil Rights Act of 1964, as amended."

5

three reasons: first, Sattley did not exhaust his administrative remedies with the California Department of Civil Rights (CRD).[3] Second, Sattley could not identify any specific protected activity in which he had engaged, and had no evidence of a causal relationship between any protected activity and his termination. Finally, the city argued it had a legitimate, nonretaliatory reason for firing Sattley—he was not in compliance with the health order and thus did not meet the minimum requirements of his job.

The trial court granted the city's motion. The court reasoned, "Given [Sattley's] undisputed failure to obtain a right-to-sue letter for his retaliation claim, the claim fails as a matter of law." The court further noted, "Even if [Sattley] had exhausted his administrative remedy, the Court would still grant the motion." The court explained Sattley "presented no evidence of any specific social media post he made, nor of any statement he made in those posts." Because he had not identified any specific posts he made, he "failed to show that any post was sufficiently close in time to his termination to support a prima facie showing of causation." Sattley also offered "no evidence that Chief Barton, who made the decision to terminate [Sattley], even saw any particular social media post or considered it in making his decision." Finally, Sattley "presented no evidence [the city's] purported legitimate, non-retaliatory reason for terminating [Sattley] was pretextual."

Prior to filing the motion for summary judgment, the city filed an application for an order continuing trial due to the necessity of obtaining additional discovery. Sattley's attorneys

---

[3] The CRD was known as the DFEH until July 2022. It is referred to as the DFEH in most current case law.

initially opposed the request, but later changed their position, indicating the case was still in the early stages of discovery and critical evidence was needed. The motion for summary judgment proceeded as scheduled. Sattley argued the motion should be denied pursuant to Code of Civil Procedure section 437c, subdivision (h) (section 437c(h)), which permits denial of a summary judgment motion if it appears "facts essential to justify opposition may exist but cannot, for reasons stated, be presented." The court found Sattley failed to meet the requirements of section 437c(h) to obtain a continuance.

Final judgment in favor of the city was entered on October 12, 2023. Sattley filed his notice of appeal on October 19, 2023.

## DISCUSSION

### I. Demurrer to failure to accommodate cause of action

Sattley first challenges the trial court's decision sustaining the city's demurrer as to his seventh cause of action for failure to accommodate his religious beliefs.

#### A. *Demurrer standard of review*

The order sustaining the city's demurrer is reviewed de novo. (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.) We must exercise our independent judgment as to whether, as a matter of law, the complaint states a cause of action under any legal theory. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.) When evaluating the complaint, we construe it liberally and take all properly pleaded facts as true. (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943.) "[A]ll material facts pleaded in the complaint and those that arise by reasonable

7

implication, but not conclusions of fact or law, are deemed admitted by the demurring party." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.) We do not consider "opinions, speculation or allegations which are contrary either to law or to judicially noticed facts." (*Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1024–1025.)

An order denying a request for leave to amend is reviewed for abuse of discretion. (*Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 161.) "To show an abuse of discretion, the plaintiff has the burden of demonstrating that 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.'" (*Id.* at p. 162.)

## B. *Applicable law*

Government Code section 12940, subdivision (*l*) establishes that it is unlawful "[f]or an employer . . . to discharge a person from employment . . . or to discriminate against a person . . . because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . ."

In establishing a claim for failure to accommodate religious beliefs, "the employee must establish a prima facie case that he or she had a bona fide religious belief, of which the employer was aware, that conflicts with an employment requirement." (*Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 370.) If the employee establishes the existence of such a bona fide religious belief, "the employer must establish it initiated good faith efforts to accommodate or no accommodation was possible without producing undue hardship." (*Ibid.*)

8

**C.    *Sattley's allegations of bona fide religious belief***

Sattley's allegations of his alleged bona fide religious belief consisted of one sentence: "He had a sincerely held religious belief or practices that conflicted with a stated job requirement (mandatory Covid vaccination)."

The city argued on demurrer these allegations were insufficient to establish a prima facie case of failure to accommodate, taking the position Sattley could not "plead entitlement to an accommodation process without pleading facts about his religious beliefs."  In short, Sattley's "conclusory allegation that he had a 'sincerely held religious belief'" was a conclusion of law.  The trial court agreed.

**D.    *Analysis***

The California Supreme Court has held a religious belief must be more than "a philosophy or a way of life."  (*Smith v. Fair Employment & Housing Comm.* (1996) 12 Cal.4th 1143, 1166.) Employers are not required to "'accommodate what amounts to a "purely personal preference."'"  (*Friedman v. Southern Cal. Permanente Medical Group* (2002) 102 Cal.App.4th 39, 57 (*Friedman*).)  In order to satisfy this element of his claim, Sattley was required to make a prima facie showing "both that the belief or practice is religious and that it is sincerely held."  (*Ibid.*)  Thus, Sattley was required to allege facts allowing the court to determine "'whether [his] particular belief-system should be considered a religion'" (*id.* at pp. 59–60) and whether "the 'belief' for which protection is sought . . . is . . . 'sincerely held'" (*Redmond v. GAF Corp.* (7th Cir. 1978) 574 F.2d 897, 901,

9

fn. 12).[4] We do not assume the truth of Sattley's conclusory allegation. (*Rodas v. Spiegel, supra*, 87 Cal.App.4th at p. 517.)

Sattley cites several cases in support of his argument he sufficiently alleged a sincerely held religious belief. *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592 involved a motion for judgment on the pleadings on a claim for declaratory relief on an insurance policy. The complainant sought a judicial determination of the rights and obligations of the parties with respect to defense and indemnity. (*Id.* at p. 604.) The insurance company argued Lockheed was required to plead facts establishing exhaustion of primary policies before any conflict arose between the parties. (*Id.* at p. 608.) Under those circumstances, the *Ludgate* court noted "'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.'" (*Ibid.*) Sattley has not done so here. He has failed to set forth the essential facts of his case, in that he has failed to explain his religious beliefs and how they interfere with the vaccination requirement. Sattley points to a statement in *Ludgate* asserting "'less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff.'" (*Ibid.*) Here, Sattley has more information about his religious beliefs, and how they conflict with the vaccine mandate, than the city. This

---

[4] In considering the concept of religion, California courts consistently look to federal authority. (*Friedman, supra*, 102 Cal.App.4th at p. 49.) We thus refer to federal case law throughout this discussion.

10

information is essential to his claim and necessary to acquaint the city with the nature of his cause of action.

*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004 involved a Jehovah's Witness who provided evidence that he attended religious conventions nearly every year for over 25 years. (*Id.* at p. 1009.) He sought and was denied a request for time off to attend the convention. (*Id.* at p. 1010.) When he missed work and attended the convention despite the denial of his request, he was suspended, and subsequently fired. (*Ibid.*) In *Gemini*, the former employee provided significantly more detail than Sattley asserts here. The *Gemini* plaintiff described his religious tradition and provided details regarding the way in which this religious obligation conflicted with his work obligations. In contrast Sattley has provided no details of his alleged religious belief nor how such beliefs conflict with the vaccine requirement in the health order. While the former employee in *Gemini* was not required to "explain[] his religious beliefs to his employer and provide[] enough information about his religious needs for Gemini to understand the *significance* of the convention and how his attendance was tied to his religious beliefs", he was required to "cite a religious connection," which he did. (*Id.* at p. 1015.) Sattley made no such connection, except in conclusory form.

Sattley also cites *Ohno v. Yasuma* (9th Cir. 2013) 723 F.3d 984, which noted "[c]ourts typically give credence to assertions of sincerely held religious beliefs in absence of any challenge to their sincerity or religious motives, and so long as they are not 'so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause.'" (*Id.* at p. 1011.) Here, the city challenges Sattley's sincerity and religious motives.

11

His request for religious exemption was denied, and his allegations are conclusory. The court had no way of knowing whether his religious beliefs were bizarre and nonreligious in motivation, because he provided insufficient, conclusory allegations.

Similarly, in *Together Employees v. Mass General Brigham Inc.* (D.Mass. 2021) 573 F.Supp.3d 412, 339–440, the court was "presented with a series of affidavits, each alleging that the employee holds a sincere religious belief that precludes COVID-19 vaccination." The case does not suggest that one sentence, completely devoid of any description of the asserted religious beliefs or the connection to the COVID-19 vaccine, is sufficient to survive demurrer. The *Mass General* court declined to delve into the various affidavits, but "assume[d], for the sake of argument, that plaintiffs can establish a *prima facie* case that a *bona fide* religious belief prevents them from taking the COVID-19 vaccine." (*Id.* at p. 441.) Having made this assumption, the *Mass General* court concluded Mass General showed a likelihood of success on the merits of its claim of undue hardship in accommodating the employees. (*Id.* at p. 442.)[5]

---

[5] Sattley cites several cases for the first time in his reply brief, which he argues show it is inappropriate to dismiss COVID-related religious accommodation claims at the pleading stage. All are distinguishable because the pleadings contained far more detail than Sattley provided as to the appealing parties' religious beliefs and how those beliefs conflicted with the COVID-19 vaccine. In *Bazinet v. Beth Israel Lahey Health, Inc.* (1st Cir. 2024) 113 F.4th 9, the appellant explained, "'COVID-19 vaccines currently available developed and confirmed their vaccines using fetal cell lines, which originated from aborted fetuses.'" (*Id.* at

12

Sattley argues to survive demurrer he was required to plead only ultimate facts, not evidentiary facts. He asserts his religious beliefs are evidentiary facts, thus he was not required to

p. 13.) Based on those specific allegations, the plaintiff indicated partaking in the vaccine would make her complicit in that action and was an aberration to her faith. The plaintiffs in *Passarella v. Aspirus, Inc.* (7th Cir. 2024) 108 F.4th 1005, 1008, and *Bube v. Aspirus Hospital, Inc.* (7th Cir. 2024) 108 F.4th 1017, 1019, similarly expressed detailed concerns related directly to their religious beliefs. While there were multiple plaintiffs in *Passarella*, their allegations included statements explaining their beliefs that a "body 'is [the Lord's] dwelling place' and that '[a]fter prayerful consideration, I don't feel at peace about receiving the COVID vaccine,'" and "'I must follow the message that God has given me not to receive the vaccine.'" (*Passarella, supra*, at p. 1007) In *Bube*, the plaintiffs included statements such as "'I trust in God completely and cannot accept this vaccine in my body'" and receiving the vaccine would be "'going against what God has intended for me.'" (*Bube, supra*, at p. 1019.) The plaintiff in *Lucky v. Landmark Medical of Michigan, P.C.* (6th Cir. 2024) 103 F.4th 1241, 1243, also pled sufficient facts, including that her beliefs included the belief that "she 'should not have any vaccination enter her body such that her body would be defiled,'" that she sought to make all decisions through prayer, and specifically that "'God spoke to [her] in her prayers and directed her that it would be wrong to receive the COVID-19 vaccine.'" In *Ringhofer v. Mayo Clinic, Ambulance* (8th Cir. 2024) 102 F.4th 894, 901, the various plaintiffs alleged varying beliefs, pled with sufficient detail—i.e., that their bodies were temples, and thus they should not inject them with foreign substances, or that their anti-abortion beliefs, rooted in their religion, prevented them from using a product developed with fetal cell lines. Sattley's single, conclusory allegation does not suffice under these authorities.

13

plead them. In support of this argument, Sattley cites *Logan v. Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 126. In *Logan*, the court concluded the plaintiff could not state a cause of action supporting his claim of a taking without due process. The court stated, "Logan argues the legal conclusion that he was not accorded due process, but has not presented ultimate facts as to how his due process rights were violated at the hearing." (*Ibid.*) *Logan* supports the conclusion that Sattley has pleaded insufficient, conclusory allegations here.[6]

Federal district courts grant motions to dismiss when plaintiffs do not adequately allege their religious beliefs or how those beliefs conflict with a job requirement. For example, in *Bartholomew v. Washington* (W.D.Wash. 2023) 693 F.Supp.3d 1107, 1113, the district court found the plaintiff had failed to state a bona fide religious belief that conflicted with an employment policy. The court noted, "[n]owhere in Plaintiff's complaint does he specifically state what religious beliefs he holds or why his religious beliefs conflict with [the defendant's] vaccine requirement. At most, Plaintiff alleges that he completed a religious accommodation request . . . ." Similarly, in *Craven v. Shriners Hospitals for Children* (D.Or. 2024) 2024 WL 21557, *3, the district court determined the plaintiff had not properly pleaded employment discrimination on the basis of religion where the plaintiff pleaded he was a "'devoutly religious individual who

---

[6]     *Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 848, also cited by Sattley, involved a complaint that was "not particularly reader-friendly," but the court found "the Mahans' core allegations" to be set forth in a "reasonably coherent fashion." Since coherence is not an issue in this case, the *Mahan* case is unhelpful to Sattley.

adheres to principles of a Christian faith,'" and his "'sincerely held religious beliefs conflicted with the Defendant's COVID-19 vaccine mandate.'" The court held the single conclusory allegation was insufficient under Federal Rules of Court, rule 12(b)(6). (*Craven*, at p. *3.) The court noted its conclusion "comports with those of other courts." (*Ibid.*; see *Gamon v. Shriners Hospitals for Children* (D.Or. 2023) 2023 WL 7019980, *3.)

Because Sattley failed to adequately plead a bona fide religious belief that conflicted with the health order, the trial court properly sustained the city's demurrer to this cause of action. (*Soldinger v. Northwest Airlines, Inc., supra*, 51 Cal.App.4th at p. 370.)

### E. *Leave to amend*

On appeal, we must determine whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The party seeking leave to amend carries the burden of showing "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

In support of his argument that he should be granted leave to amend, Sattley argues he "can allege facts in an amended complaint that explain, in detail, what his religious beliefs are, where they come from, and how they affect his objection to vaccination." Without providing citation to the record, Sattley argues he has described these things in discovery responses and during deposition.

Sattley's showing is insufficient. Sattley was required to provide "factual allegations that sufficiently state all required

15

elements" of his cause of action. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) Such allegations must be "factual and specific, not vague or conclusionary." (*Id.* at p. 44.) Sattley has not described with specificity additional facts that he would plead in an amendment either in his briefs or at oral argument. He has not offered specifics about his religious beliefs nor how such beliefs conflict with the health order.[7] Sattley did not provide any such detail in his opposition to the city's demurrer, nor does he provide any

---

[7] In his reply brief, Sattley claims his proposed third amended complaint contained further information about his religious beliefs. The new allegations stated only "Sattley is a Christian. He has a sincerely held religious belief that prevents him from taking the Covid-19 vaccine." Sattley's addition of the denomination of "Christian" does not clarify his religious objection, as he had already described his religion as "Mormon/Christian" in his November 2021 DFEH charge. Sattley argues in his reply brief that he has "similar religious beliefs to those expressed in the circuit court decisions discussed above. He can allege those beliefs in detail." (See fn. 5, above.) He provides no citation to the record, nor does he provide any further detail than to assert he will mimic the claims of plaintiffs in other cases (although he does not specify which case). Sattley's suggestion insufficient. The allegations in the federal cases are specific to each individual plaintiff's subjective belief. The individual plaintiffs expressed various reasons their individual beliefs interfered with a vaccine mandate, depending on the individual plaintiff's personal belief. Sattley has failed meet his burden of adequately stating his own beliefs and how those beliefs conflict with the health order.

16

such detail on appeal.[8]  Because a bona fide religious belief and a conflict between that religious belief and the employment requirement are essential to his failure to accommodate cause of action, the trial court did not err in declining to permit Sattley to amend his complaint.

## II.    Summary judgment on retaliation cause of action

Sattley's second challenge is to the trial court's order granting the city's summary judgment motion as to Sattley's 11th cause of action for retaliation in violation of FEHA.

---

[8]    Sattley argues the city's own witnesses testified they listened to Sattley describe his religious beliefs, understood his religious beliefs, and did not have any reason to doubt his sincerity.  In support of this contention, Sattley cites the deposition testimony of Ovrom, who conducted an interview with Sattley concerning his request for accommodation.  Sattley exaggerates Ovrom's comments.  Specifically, Ovrom commented, "The information shared during the interview we conducted with Mr. Sattley upon evaluation did not, in our opinion, meet the standard for what would qualify for a religious exemption."  Ovrom later specified: "upon reviewing the information he shared, it did not, in our opinion, qualify as being a sincerely-held religious belief that would qualify for not being vaccinated.  I'm not saying he doesn't have sincere religious beliefs, just that it didn't necessarily preclude him from being able to receive the vaccination."  Ovrom could not recall what specific religion Sattley identified with, but did not believe Sattley was lying when he expressed his religious beliefs.  The cited information does not support Sattley's argument that he should be permitted leave to amend.

17

**A.** *Failure to exhaust administrative remedies*

**1.** *Applicable law*

"FEHA creates an administrative agency . . . whose task it is to receive, investigate and conciliate complaints of unlawful employment discrimination." (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613 (*Okoli*).) "If, following receipt of a complaint, the [CRD] fails to resolve the case or to file an accusation against the employer within 150 days, it must notify the employee in writing of his or her right to file a civil action under the FEHA." (*Ibid.*) "This notification is commonly referred to as a 'right to sue' letter." (*Ibid.*)

Before filing a FEHA lawsuit, a plaintiff is required to exhaust administrative remedies with the CRD. (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345.) "Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters." (*Ibid.*) "Courts have referred to this requirement as a '"jurisdictional prerequisite."'" (*Ibid.*) "To exhaust his or her administrative remedies as to a particular act made unlawful by the [FEHA], the claimant must specify that act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts." (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724.) Sattley bears the burden of proving the exhaustion requirement was met. (*Kim, supra*, at p. 1345.)

**2.** *Relevant facts*

Sattley filed a charge with the EEOC, which was automatically dual-filed with the CRD (formerly DFEH), on November 12, 2021. The charge alleged religious discrimination only, not retaliation for a protected activity. Sattley's charge

18

asserted he provided a religious accommodation request that explained the reasons the COVID-19 vaccine was against his religious beliefs.  Sattley wrote, "To date, I have not been accommodated to continue working without receiving the COVID-19 vaccine.  I believe I was discriminated against due [*sic*] my religion (Mormon/Christian), in violation of Title VII Civil Rights Act of 1964, as amended."  Sattley filed no further claims with the EEOC or DFEH prior to filing his first amended complaint or the SAC.

Sattley's original complaint, filed in December 2021, did not contain a FEHA retaliation claim.  On March 9, 2022, Chief Barton terminated Sattley, effective March 11, 2022.  Sattley's first amended complaint, filed March 25, 2022, added the cause of action for retaliation in violation of FEHA.  The SAC, filed August 9, 2022, also contained the cause of action for retaliation in violation of FEHA.

On November 9, 2022, three months after the filing of the SAC, Sattley filed another charge with the EEOC (dual-filed with the CRD), alleging the city retaliated against him for engaging in protected activity.  At the time the city's summary judgment was heard, Sattley had not received a right-to-sue letter from the CRD.[9]

---

[9]     Sattley has filed a request for judicial notice, asking we take judicial notice of his filing of a new charge with the CRD on April 22, 2024, and the right-to-sue notice he received on the same date.  We granted Sattley's request.  Sattley's new charge was filed over four months after his notice of appeal in this matter.  Therefore, it is not relevant to the question of whether Sattley exhausted his administrative remedies prior to filing his cause of action for retaliation.  As the new charge is not relevant

**3.** *Sattley has failed to show he exhausted his administrative remedies prior to filing the FEHA retaliation claim*

Filing an administrative charge and obtaining a right-to-sue letter is a jurisdictional prerequisite to filing a civil claim under FEHA. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 83.) "Thus, instead of abating an action as premature, a trial court must grant summary judgment and dismiss the suit upon a finding that a party has not exhausted his or her administrative remedies." (*Miller v. United Airlines, Inc.* (1985) 174 Cal.App.3d 878, 890.)

A trial court has no jurisdiction to hear a retaliation cause of action if the plaintiff has never filed a charge with the CRD encompassing the purported retaliation. (*Okoli, supra,* 36 Cal.App.4th at p. 1612.) This is true even if the plaintiff has filed a charge with the CRD alleging other illegal acts such as discrimination. (*Id.* at p. 1613.) In *Okoli*, the plaintiff filed a charge with the CRD (formerly DFEH) of discrimination based on race and national origin in May 1988. Following its investigation, in December 1988, the CRD notified the plaintiff of his right to pursue civil litigation. In June 1989, the plaintiff filed suit against Lockheed, alleging causes of action for racial discrimination, racial harassment, and retaliation. (*Id.* at p. 1610.) On appeal, the court explained, "it is undisputed that Okoli filed a charge of discrimination with the DFEH in which he alleged specific instances of discrimination based on his race and national origin. It is also undisputed that he did not file a

_____

to our decision on the summary judgment, we decline to consider it in connection with this appeal.

20

subsequent charge based on acts of retaliation by his employer. The question on this appeal is whether he can maintain his retaliation claim in spite of his failure to enumerate that claim in his charge before the DFEH." (*Id.* at p. 1613.) The *Okoli* court concluded "the unlawful retaliation, which occurred *after* the filing of the DFEH charge, would not reasonably have been uncovered in an investigation of the charges that were made." (*Id.* at p. 1617.) In sum, "Since Okoli's complaint added claims that were neither like nor reasonably related to his DFEH claim and were not likely to be uncovered in the course of a DFEH investigation, his retaliation claim is barred by the exhaustion of remedies doctrine." (*Ibid.*)

Similarly, in *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153, the Court of Appeal considered the question of "'whether [Wills] can maintain the instant action for alleged incidents of discrimination [retaliation, harassment, and failure to accommodate] which were not specifically enumerated in [her] complaint before the DFEH.'" Wills's DFEH complaint asserted she was discriminated against because her employer refused to reinstate her following her medical leave of absence. It did not mention disability discrimination, retaliation, harassment, or failure to accommodate. Nor did it mention her termination. The court thus concluded she failed to exhaust her administrative remedies as to her second through sixth causes of action. (*Id.* at p. 159.)[10]

---

[10] Federal decisions interpreting Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) are in accord. (See, e.g., *Fundukian v. United Blood Services* (9th Cir. 2001) 18 Fed.Appx. 572, 575 [EEOC charge alleging retaliation for opposing racially

21

Sattley alleged in his November 2021 charge that he was subjected to religious discrimination by being denied a religious accommodation. At that time, he was still employed with the city. After his termination, Sattley added a cause of action for retaliation to his lawsuit. Sattley's November 2021 charge alleging religious discrimination, prior to his termination, was not sufficient to exhaust administrative remedies as to his retaliation cause of action based on his termination from employment four months later. Therefore, the retaliation cause of action is properly summarily adjudicated in favor of the city. (*Miller v. United Airlines, Inc., supra,* 174 Cal.App.3d at p. 890.)[11]

Sattley cites *Corkill v. Preferred Employers Group, LLC* (S.D.Cal. 2011) 2011 WL 5975678, *8, for the proposition that

discriminatory practices was not sufficiently related to plaintiff's claims of discrimination based on her race, sex and age]; *Ware v. NBC Nevada Merchants, Inc.* (D.Nev. 2016) 219 F.Supp.3d 1040, 1044–1045 [EEOC charge alleging plaintiff was subjected to harassment through a racially insensitive birthday card and subject to disparate treatment when her employer hired a security guard to monitor her not sufficiently related to her claims of discriminatory practices in hiring and allocating overtime].)

[11] Sattley's November 2022 charge did not satisfy the exhaustion requirement because it was filed after the retaliation claim was added to the complaint and because Sattley never received a right-to-sue letter stemming from this charge. As set forth above, the April 2024 charge, filed after Sattley initiated this appeal, is also insufficient to satisfy exhaustion of administrative remedies, which must take place *before* the plaintiff files a civil suit. (*Miller v. United Airlines, Inc., supra*, 174 Cal.App.3d at p. 890 ["an individual must exhaust his or her administrative remedies before filing a civil action"].)

"the FEHA administrative exhaustion requirement like the Title VII requirement is subject to equitable exceptions, such as waiver, estoppel, and tolling." However, Sattley fails to make a factual argument as to how such doctrines are applicable here.

Sattley further argues the claims presentation requirement is not as narrow as the city argues. Sattley contends he need not identify every unlawful act, citing *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 266 (*Nazir*) for the proposition that a subsequent lawsuit may include "claims that are ""like and reasonably related to" the allegations of the DFEH charge.'" In making this determination, "what is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation." (*Id.* at p. 268.)

*Nazir* is distinguishable. In *Nazir*, the employee was subjected to harassment beginning in the early 1990's and, after he complained numerous times over the years, was terminated from employment in May 2005. (*Nazir, supra,* 178 Cal.App.4th at pp. 258–262.) The plaintiff's first precomplaint questionnaire was submitted to DFEH in July 2005. He checked boxes indicating he had been discriminated against due to race, color, age, religion, disability, national origin and ancestry. There was no box for harassment. However, he wrote that he had been discriminated against and harassed "'nonstop since 1991.'" (*Id.* at p. 265.) In a second precomplaint questionnaire, the plaintiff indicated he had endured relentless unfair and prejudicial treatment by his colleagues and had informed human resources on numerous occasions. (*Ibid.*) His first complaint for discrimination, which was prepared by someone at DFEH, was filed on October 3, 2005. (*Ibid.*) In May 2006 the plaintiff filed

23

two more complaints with the DFEH, which indicated he was "'harassed and fired in retaliation for taking medical leave and in retaliation for opposing harassment against me on the basis of my religion (Muslim), my color (dark), and my national origin (parents from Pakistan, born in Kuwait).'" (*Id.* at p. 266.) On May 23, 2006, the DFEH sent plaintiff a notice of case closure because "'an immediate right to sue letter was requested.'" (*Ibid.*) The operative complaint, which asserted causes of action for harassment as well as discrimination, was filed July 7, 2006. (*Id.* at p. 250.)

The trial court determined all the alleged acts of harassment were barred for failure to exhaust administrative remedies. On appeal, the defendant argued, among other things, that the factual statement in the October 2005 DFEH charge made no reference to being harassed, and harassment is not like or related to discrimination. (*Nazir, supra*, 178 Cal.App.4th at p. 266.) The appellate court rejected this argument, stating: "'Administrative charges are to be construed liberally because they are often drafted by claimants without the assistance of counsel.'" (*Id.* at pp. 266–267.) Applying those principles, the court determined the trial court's summary judgment was in error. The court concluded, "The materials [plaintiff] submitted to the DFEH are certainly adequate to specify the nature of his problems at the workplace. In both of his questionnaires, he expressly claimed to be the victim of constant harassment." (*Id.* at p. 268.)

In contrast to the present matter, the plaintiff in *Nazir* mentioned harassment numerous times. Sattley failed to mention retaliation at all, failed to mention his criticism of the city on social media, and failed to supplement his CRD charge

following his termination. Even construed liberally, Sattley's CRD charge does not satisfy his obligation to exhaust administrative remedies.[12]

Because Sattley failed to exhaust his administrative remedies as to his retaliation cause of action, it was properly summarily adjudicated in favor of the city.

## B. *Merits of retaliation claim*

The trial court noted in its order that even if Sattley had exhausted his administrative remedy, the court would still grant the city's motion for summary judgment. Both parties address the trial court's alternative rationale. Although it is unnecessary, we briefly address the merits of Sattley's claim.

---

[12] Sattley cites *Sosa v. Hiraoka* (9th Cir. 1990) 920 F.2d 1451, 1456–1457, for the proposition that the inquiry into the jurisdictional scope of any action can include "allegations occurring not only before, but also after the filing of" an EEOC charge. *Sosa* is distinguishable because the *Sosa* court concluded "all of Sosa's allegations are sufficiently 'like or reasonably related to' the allegations contained in Sosa's EEOC charge." (*Id.* at p. 1457.) In addition to his claims of denial of promotion, Sosa asserted in his EEOC charge that the department and its administrators had engaged in a pattern and practice of retaliating against him because he had previously filed discrimination charges and complaints against them. (*Ibid.*) The *Sosa* court thus concluded, "Because all of the acts Sosa alleged in his First Amended Complaint are on their face like or reasonably related to the allegations in his EEOC charge, including the allegation of a continuing violation, the district court should not have dismissed Sosa's complaint for lack of jurisdiction." (*Id.* at p. 1458.) We reach a different conclusion based on the facts before us.

To prevail on a claim for retaliation under FEHA, a plaintiff must show (1) the employee engaged in a protected activity; (2) the employer took adverse employment action against the employee; and (3) the cause of the adverse employment action was the employee's engagement in the protected activity. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) If the plaintiff can establish a prima facie case, the burden shifts to the employer to show a legitimate, nonretaliatory reason for the adverse employment action. (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 831.) "A defendant moving for summary judgment, however, may skip to the second step of the analysis and demonstrate that it had a legitimate business reason . . . for taking its employment action." (*Ibid.*)

### 1. *Protected activity*

Sattley argues he engaged in protected activity during the fall of 2021 when he criticized the city's COVID personnel policies on social media and filed this lawsuit. He argues this qualifies as a protected activity because it involved "'some degree of opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful.'" (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 382 (*Dinslage*).)

Generally, employees are protected from retaliation for conduct opposing what the employee reasonably believes to be unlawful discrimination. (*Dinslage, supra,* 5 Cal.App.5th at p. 383.) That an employee perceives his employer's actions as "unwise or even improper" is "not enough to make his opposition a protected activity." (*Id.* at p. 382.) Sattley had the burden of

showing that his criticisms of the city's COVID policy qualified as a protected activity.  (*Id.* at p. 384.)

Sattley fails to point to a specific social media post that he believed was the basis for his termination.  Sattley's general objections or disagreement with the city's policy is insufficient, in the absence of a showing that Sattley was protesting unlawful behavior.  Sattley argues the court should not focus on any specific social media post, but instead look to whether Sattley can "demonstrate some degree of opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful."  (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 652–653, overturned on other grounds by legislative action.)  The *Rope* case is unhelpful to Sattley, as the court concluded the plaintiff failed to make a prima facie showing of a protected activity sufficient to support a claim for retaliation in violation of FEHA.  (*Rope*, at pp. 652–653.)  Similarly, here, Sattley's vague allegations that he criticized the city's COVID policy do not show a reasonable belief that the city's actions were unlawful.  Under the circumstances, Sattley failed to set forth a prima facie case of retaliation.

**2.** *Legitimate, nondiscriminatory reason*

Even if Sattley could establish a prima facie case, the city had a legitimate, nondiscriminatory reason for terminating his employment.  An employee's inability to perform the essential tasks of his or her job is a legitimate, nondiscriminatory reason to terminate the employee. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 [examples of legitimate reasons are a failure to meet performance standards or a loss of confidence in an employee]; *Arteaga  v. Brink's, Inc.* (2008) 163 Cal.App.4th

327, 352 [loss of confidence in an employee to perform his essential job tasks is a legitimate, nondiscriminatory reason for discharge].)

Here, the undisputed facts show the city terminated Sattley's employment because Sattley refused to comply with the health order after his request for accommodation was denied. On October 1, 2021, he was placed on administrative leave because, under the terms of the health order, he could no longer perform his job obligations. This administrative leave occurred prior to the time Sattley allegedly began criticizing the city on social media. The health order required that all EMT's and paramedics in the county be vaccinated by September 30, 2021. The health order applied to Sattley. His request for accommodation was denied, and he failed to submit proof of vaccination. Chief Barton could not see any way that Sattley could perform his job when he was not in compliance with the health order, therefore Sattley's employment was terminated.

Sattley argues a jury should determine whether his criticism of the city in the fall of 2021 was the reason for his termination from employment. He argues the timing of his termination matches with his social media criticisms in the late fall of 2021, and that the city notified Sattley of its intent to fire him just a few days after it learned of this lawsuit. Further, Sattley argues, he was otherwise in good standing with the department and was an excellent employee.

Temporal proximity does not support a finding of pretext here. "[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." (*Arteaga, supra*, 163 Cal.App.4th at p. 353.) "This is especially so

28

where the employer raised questions about the employee's performance *before* [the protected acts], and the subsequent termination was based on those performance issues."  (*Ibid.*) Here, the city placed Sattley on administrative leave before his alleged protected activity, and his subsequent termination was for the same reason as his initial leave.

The city's termination of Sattley for his failure to comply with the health order was a legitimate, nonretaliatory reason for Sattley's termination.

## III. Motion to continue

Sattley argues the trial court should have denied the summary judgment motion pursuant to section 437c(h) because he had not been able to conduct the necessary discovery to find facts and evidence to oppose the motion.[13]  In the absence of an affidavit that requires a continuance, we review a trial court's denial of a continuance under section 437c(h) for abuse of discretion.  (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253.)

Preliminarily, we note the summary judgment motion involved only Sattley's retaliation claim. Additional discovery would not have changed the outcome of the motion because Sattley failed to exhaust his administrative remedies as to this claim.  Thus, Sattley cannot show prejudice stemming from any asserted error in failing to continue the matter, and any such

---

[13]     Section 437c(h) provides, in part: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just."

error is not reversible.  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [error "generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached"].)  We need not address the parties' arguments on this issue further.  However, as set forth below, we conclude no abuse of discretion occurred.

"An opposing party's declaration in support of a motion to continue the summary judgment hearing should show the following: (1) '*Facts* establishing *a likelihood that controverting evidence may exist* and *why* the information sought is *essential* to opposing the motion'; (2) 'The *specific reasons* why such evidence cannot be presented at the present time'; (3) 'An estimate of the *time* necessary to obtain such evidence'; and (4) 'The specific steps or procedures the opposing party intends to utilize to obtain such evidence.'" (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532.)  In exercising its discretion as to whether to grant a continuance under section 437c(h), a trial court may consider "the extent to which the requesting party's failure to secure the contemplated evidence more seasonably results from a lack of diligence on his part."  (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.)

The trial court found Sattley did not meet the requirements of section 437c(h).  The court explained: "After [Sattley] was terminated on March 9, 2022, [Sattley] filed a First Amended Complaint on March 25, 2022.  The operative Second Amended Complaint was filed on August 9, 2022.  The trial date of October 23, 2023 was set on December 5, 2022.  [Sattley's] counsel . . . states in conclusory fashion that the City and Sattley did not commence discovery until the Spring of 2023 and

30

describes the action as in the early stages of discovery.  This is utterly insufficient.  [Sattley's] counsel offers no explanation as to why he failed to initiate any discovery regarding [Sattley's] claim for over eighteen months.  Moreover, none of the proposed discovery could rebut [Sattley's] failure to exhaust his administrative remedies."  Thus, the trial court denied Sattley's motion for continuance under section 437c(h).

Sattley argues he met the standard under section 437c(h).  In support of his request for a continuance, Sattley filed the declaration of Scott J. Street, his counsel, on August 27, 2023.  Street acknowledged that the case was filed in December 2021, but claimed that after early motion practice the parties "focused on litigating the claims against the City and Councilman Mirisch."  Street then claimed, "Discovery between the City and Sattley did not start until the spring of 2023.  The City did not produce a witness for deposition until July 28, and the witnesses it produced that day refused to (or couldn't) answer many key questions, including questions about how Sattley violated the County Health Order and why he had to be terminated when the City accommodated every other firefighter who insisted on it."[14]  As the city points out, the declaration does not explain why such evidence could not have been sought earlier, nor does it suggest Sattley sought to depose any witnesses prior to July 28, 2023.

Street stated he was seeking to depose Jennifer Petrusis, a lawyer listed as counsel of record for the city in this case, who participated in Sattley's accommodation process and thus may have been able to answer questions other city witnesses could not

---

[14]    The city challenges this statement, stating the record shows the city in fact denied accommodations to six firefighters.

answer. Street was aware the city intended to seek a protective order. The city argues it would have prevailed on such an order, as there are legal hurdles to deposing a party's counsel, and Sattley could not have prevailed on these hurdles.

Sattley argues the parties first focused on litigating the constitutional claims involving the health order, as those claims would have ended the case early on. Sattley claims this is why discovery was still in the early stages at the time the summary judgment deadlines were approaching. However, the trial court was more involved with the proceedings below, and we defer to its assessment of the parties' diligence. Sattley failed to explain what efforts were made to take the depositions earlier or why, despite the focus on the constitutional issues, the depositions could not have commenced at an earlier date. Under the circumstances, we cannot say the trial court abused its discretion in denying the continuance. (*Cooksey v. Alexakis, supra*, 123 Cal.App.4th at p. 256; see *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 356–357 [continuance not warranted where declaration fails to explain what efforts were made to take necessary depositions or why they could not have been taken earlier].)

Sattley cites *Hamilton v. Orange County Sheriff's Dept.* (2017) 8 Cal.App.5th 759 as an example of a case where the trial court abused its discretion in denying a requested continuance under section 437c(h) solely based on its view of counsel's alleged delay in conducting discovery. The facts of *Hamilton* are different. In *Hamilton*, the parties had stipulated to continue the summary judgment hearing and trial for 60 days. While the plaintiff had timely noticed the relevant depositions, they could not go forward because defendant's counsel was engaged in trial.

Under the circumstances, the *Hamilton* court concluded the trial court abused its discretion by failing to accommodate counsels' joint request for the continuance.  (*Id.* at pp. 761–762.)  While the plaintiff had not met the showing required under section 437c(h), she did make a showing of good cause.  (*Hamilton*, at p. 765.)  The "relatively minor lack of diligence" on the part of plaintiff's attorney did not justify "the substantial injustice the court's order created."  (*Id.* at p. 766.)

Sattley complains the trial court failed to consider additional factors set forth in *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 644, including: "(1) how long the case has been pending; (2) how long the requesting party had to oppose the motion; (3) whether the continuance motion could have been made earlier; (4) the proximity of the trial date or the 30-day discovery cutoff before trial; (5) any prior continuances for the same reason; and (6) the question whether the evidence sought is truly essential to the motion."  Sattley asserts, without explanation, that most of these factors favored a continuance.  He fails to make a citation to the record showing he sought a continuance based on these factors or argued the trial court should consider them.

The standard of review in this matter is abuse of discretion.  Under this standard, we do not reverse a trial court ruling if it was based on reasoned judgment and complied with legal principles and policies relevant to the matter.  (*City of San Diego v. Rancho Penasquitos Partnership* (2003) 105 Cal.App.4th 1013, 1027.)  Sattley has failed to show that he could not have obtained the requested discovery earlier, has failed to explain why discovery had not commenced earlier, has failed to show the information he sought from Attorney Petrusis was not available

from other witnesses, and has failed to show he was entitled to depose her.  Under the circumstances, he has failed to show an abuse of discretion.

## IV.    Evidentiary ruling

Sattley argues the trial court erroneously excluded evidence of a proposal Sattley claimed he received from the city about accommodating him if he agreed to stop criticizing the city on social media.  Sattley learned about the proposal from union Attorney Stuart Adams.  On August 18, 2023, the trial court granted a protective order filed by nonparty Beverly Hills Firefighters Association (BHFA) to prevent the disclosure of attorney-client privileged communications between BHFA counsel Adams and Sattley, a BHFA member.  The BHFA argued the attorney-client privilege exists between the attorney and the union, not the individual member for whom the union is providing representation.

Sattley argues the proposal was not confidential, as Adams never told him it was confidential, and Sattley testified that "numerous people were aware of the proposal, including the association's leadership and the City's labor negotiator, Peter Brown."  Sattley argues any privilege was waived by disclosure of the substance of the communication.

The city argues Sattley forfeited this argument when he chose not to oppose the BHFA's motion for protective order or state his objections during the hearing.  Under the forfeiture doctrine, with few exceptions, "'an appellate court will not consider claims of error that could have been—but were not—raised in the trial court.'" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)  Sattley's argument fails for this reason.

Further, Sattley has failed to show prejudice from the exclusion of evidence. Sattley argues that while the consideration of this evidence is not necessary to reverse the summary judgment on his retaliation claim, it provides compelling direct evidence of retaliation. Because Sattley's retaliation claim was properly summarily adjudicated on the ground that he failed to exhaust administrative remedies, the resolution of the evidentiary issue in his favor would be of no consequence.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs of appeal.


_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
RICHARDSON, J.